UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-174 (SRN/SGE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN LIAM SCHENK,<br><br>Defendant. | ) | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its response to the defendant's motion to dismiss the Indictment. ECF 30. The defendant moves to dismiss on three grounds. First, that Count 2 of the Indictment alleging a violation of 18 U.S.C. § 611 is as-applied unconstitutional. ECF 30 at 1, 20. Second, that Count 2 of the Indictment "[f]ails to [s]tate an [o]ffense [b]ecause [s]igning a [p]olling-[p]lace [r]oster [i]s [n]ot '[v]oting'" and "no record in the [government's] production shows a ballot issued to or cast by [the defendant.]" ECF 30 at 2. Third, that Count 1 of the Indictment "does not identify the 'false statement and claim' that is the entire substance of the offense", or in the alternative, it is duplicitous. ECF 30 at 2, 26.

The defendant's as-applied constitutional challenge fails under long-standing United States Supreme Court precedent. First, when a state has already banned non-citizens from voting in federal elections—as is the case here in Minnesota—Congress may supplement such a ban by passing a law that provides additional penalties for non-citizen voting. *See Smiley v. Holm*, 285 U.S. 355, 366-367 (1932) ("In exercising

[its Elections Clause] power, the Congress may supplement the[] state regulations…It may impose additional penalties for the violation of the state laws[.]"). Second, Congress possesses "broad constitutional powers in…[the] regulation of [aliens'] conduct." *See Toll v. Moreno*, 458 U.S. 1, 11 (1982).

Because the charges in the Indictment track the statutory language of the offenses charged and fairly provide the defendant sufficient information to allow him to plead and bar a subsequent prosecution, the Indictment is facially sufficient.

<u>Relevant Procedural History and General Factual Background</u>

Title 18, United States Code, Section 1015(f) states: "Whoever knowingly makes any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election (including an initiative, recall, or referendum)—Shall be fined under this title or imprisoned not more than five years, or both." Title 18, United States Code, Section 611(a) states: "It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, [or] Member of the Senate[.]"

Public records show that the defendant voted on November 5, 2024 in Minnesota's general election. *See* ECF 1. The defendant is not a United States citizen. *Id.* As is required under Minn. Stat. § 204C.10 (2024) for any "individual seeking to vote", on November 5, 2024, the defendant signed a "voter signature certificate" which stated, in relevant part: "Read oath and sign below: I swear or affirm … that I am a

citizen of the United States … I understand that deliberately providing false information is a felony ….”

On September 24, 2026, a grand jury returned a two-count Indictment against the defendant charging him with one count of making a false claim of citizenship in order to vote, in violation of 18 U.S.C. § 1015(f) (Count 1), and one count of voting by alien, in violation of 18 U.S.C. § 611 (Count 2). ECF 1.

## ARGUMENT

1. *Section 611 Is Constitutional Under the Elections Clause.*

If a state has already banned non-citizens from voting in federal elections, then Congress may pass supplemental legislation that provides additional penalties for such conduct. Congress has the power, under the Elections Clause, to regulate the *manner* of conducting federal elections, regardless of whether it can regulate the *qualifications* for voting. *See Arizona* v. *Inter Tribal Council of Arizona, Inc.* (*ITCA*), 570 U.S. 1, 7-9, 16-17 (2013). Moreover, since Congress can regulate the manner of conducting federal elections, it has the power to punish voter fraud committed by non-citizens who vote in federal elections despite being ineligible to do so under state law. *See Smiley* v. *Holm*, 285 U.S. 355, 366-367 (1932) (“In exercising [its Elections Clause] power, the Congress may supplement the[] state regulations…It may impose additional penalties for the violation of the state laws[.]”); *Burroughs* v. *United States*, 290 U.S. 534, 547 (1934) (“The power of Congress to protect the election of President and Vice President from corruption [is] clear[.]”).

Since 1926, every state, including Minnesota, has barred non-citizens from voting in federal elections. *See* ECF 30 at 13-14. The Minnesota constitution provides that "[e]very person 18 years of age or more who has been a citizen of the United States for three months and who has resided in the precinct for 30 days next preceding an election shall be entitled to vote in that precinct." Minn. Const. art. VII, § 1. Minn. Stat. § 201.014, subd. 1 (2024) requires United States citizenship in order to vote. The Supreme Court has long established that "Congress may supplement" such state laws under the Elections Clause by "impos[ing] additional penalties for the violation of the state laws." *Smiley*, 285 U.S. at 366-367. Given such precedent, Section 611 is constitutional as applied to a defendant who (like Mr. Schenk) voted in a state that prohibits non-citizen voting in federal elections.

The defendant asks this Court to ignore the foregoing Supreme Court precedent and instead follow a 2026 opinion from the Southern District of Florida. *See* ECF 30 at 2 (citing *United States v. Cox*, No. 0:25-cr-60249-DSL, ECF No. 64 (S.D. Fla. Oct. 1, 2026), 2026 WL 2948729). Yet the Florida court in *Cox* acknowledged that Congress could have enacted a statute that was narrower than Section 611 and banned non-citizens from voting in federal elections contrary to state law. *See id*. The Florida court nevertheless held that Section 611 is unconstitutional because, as written, it also bars non-citizens from voting even if a state allows such persons to vote in federal elections. *See id.*

The Supreme Court has repeatedly held that, if the particular factual application of a federal statute falls within Congress's enumerated powers, a district

court cannot invalidate the application of the statute on the grounds that other applications may exceed those powers. In *United States v. Raines*, 362 U.S. 17 (1960), Congress had enacted a statute prohibiting "any person" from engaging "in any act or practice" that would deprive an individual of the right to vote free from racial discrimination, and a district court held that the statute was unconstitutional because it would "allow[] the United States to enjoin purely private action," which would exceed the scope of Congress's power to enforce the Fifteenth Amendment against racially discriminatory state action. *Id.* at 19-20. "Although the complaint in question involved only official action, the [district] court ruled that…the statute on its face was susceptible of application beyond" state action and thus "was to be considered unconstitutional in all its applications." *Id.* at 20.

The Supreme Court reversed. It emphasized the fundamental "rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *Id.* at 21. It thus held that, because "the complaint here called for an application of the statute clearly constitutional under the Fifteenth Amendment, that should have been an end to the question of constitutionality." *Id.* at 24-25. In other words, even though the statute in *Raines* covered both state action and private action, while the Fifteenth Amendment covered only state action, the statute was constitutional as applied to state action.

Similarly, even though Section 611 covers non-citizens voting in federal elections in both States that ban such conduct and any States that do not, the statute

is constitutional as applied to the former regardless of whether it might be unconstitutional as applied to the latter. Just as the broad phrasing of the statute in *Raines* did not render it unconstitutional as applied to state action, the broad phrasing of Section 611 does not render it unconstitutional as applied to defendants who vote in states that have banned aliens from voting in federal elections. *See Sabri v. United States,* 541 U.S. 600, 608-609 (2004) (citing *Raines* for the proposition that "laws should not be invalidated by 'reference to hypothetical cases'"). That is the case here.

2. *Section 611 Is Constitutional Because Congress May Regulate the Conduct of Aliens.*

Section 611 is also constitutional because Congress enjoys broad powers to regulate the conduct of aliens. The Court has "long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders." *Toll*, 458 U.S. at 10. This federal authority "derives from various sources," including from the federal government's power to establish a uniform rule of naturalization, to regulate commerce, and to oversee matters related to foreign affairs. *See id.* The Supreme Court has thus repeatedly held that Congress possesses "broad constitutional powers in…[the] regulation of [aliens'] conduct." *See id.* at 11; *Graham v. Richardson*, 403 U.S. 365, 376-77 (1971) (stating that Congress has "broad constitutional powers" to "regulat[e] [the] conduct" of aliens); *Keller v. City of Fremont*, 719 F.3d 931, 940 (8th Cir. 2013). Indeed, in "the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Since Congress has broad powers to regulate the conduct of aliens, it can certainly prohibit them from voting in federal elections. "A prohibition on campaign donations and contributions by foreign nationals is necessary and proper to the exercise of the immigration and foreign relations powers." *See United States v. Singh*, 979 F.3d 697, 710 (9th Cir. 2020) (citing Congress's powers under Article I). The same is true of a prohibition on voting by foreign nationals. Congress acted within its authority when it passed Section 611. *See Bluman* v. *FEC*, 800 F. Supp. 2d 281, 283 (D.D.C. 2011) (Kavanaugh, J.), *aff'd*, 565 U.S. 1104 (2012) (upholding federal statute banning certain aliens from making election-related expenditures, on the grounds that "[t]he Supreme Court has long held that the government…may exclude foreign citizens from activities that are part of democratic self-government in the United States").

The district court decision cited by the defendant erroneously concluded that Section 611 was an impermissible attempt by Congress to set voter qualifications, rather than a permissible regulation of the conduct of aliens, because the statute "cleaved off non-federal elections" from its purview. *See Cox*, slip op. at 14. But Congress could rationally exempt non-federal elections from Section 611 because it wanted to prevent aliens from influencing the House of Representatives and the United States Senate – the very bodies that could pass legislation affecting foreign voters' home countries. Indeed, the fact that Congress passed Section 611 to regulate the conduct of aliens is demonstrated by the fact that Section 611 was enacted as part

of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* Pub. L. 104-208, div. C, title II, § 216(a), Sept. 30, 1996, 110 Stat. 3009-572.

Section 611 is constitutional as applied under both the Elections Clause and Congress's well-established power to regulate the conduct of aliens. The Court should thus deny the motion to dismiss on these grounds.

3. *The Indictment is facially legally sufficient and is not duplicitous.*

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It is well settled that as long as "the indictment contains a facially sufficient allegation," it "survives a motion to dismiss for failure to state an offense." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (citing *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993), & reversing dismissal of indictment). Indeed, an indictment is usually sufficient unless it is "so defective that it cannot be said, by any reasonable construction, to charge the offense." *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (quoting *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012)); *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

The Indictment filed against the defendant readily satisfies these legal standards and meets the Rule 7(c) requirements. Count 1 of the Indictment essentially tracks the exact statutory language by alleging that "[o]n or about November 5, 2024, in the State and District of Minnesota, the defendant, Christian Liam Schenk, an alien, knowingly made a false statement and claim that he was a citizen of the United States, in order to register to vote and to vote in a Federal, State and local election, in violation of Title 18, United States Code, Section 1015(f)." ECF 1. Count 2 of the Indictment also tracks the exact statutory language by alleging that "[o]n or about November 5, 2024, in the State and District of Minnesota, the defendant, Christian Liam Schenk, an alien, fully knowing that he was not a United States citizen, did knowingly vote in an election held in part for the purpose of electing a candidate for President, Vice President, United States Senator, and Member of the House of Representatives, in violation of Title 18, United States Code, Section 611." *Id.* "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Jawher*, 950 F.3d 576, 579 n.2 (8th Cir. 2020) (quoting *Sewell*, 513 F.3d at 821). Because Count 1 and 2 are nearly verbatim of the statutory language charged, those Counts of the Indictment are facially sufficient, and the defendant's motion to dismiss should be denied.

The defendant asserts—without citation to any authority—that Count 2 of the Indictment "[f]ails to [s]tate an [o]ffense [b]ecause [s]igning a [p]olling-[p]lace [r]oster [i]s [n]ot '[v]oting'" and "no record in the [government's] production shows a ballot issued to or cast by [the defendant.]" ECF 30 at 2, 27. However, the defendant is

conflating what he states is a deficiency in what the Indictment alleges (voting by alien), with what he perceives as a deficiency in the government's-produced evidence of that allegation. But "so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence." *Ferro*, 252 F.3d at 968 (citation omitted).

The defendant also claims that Count 1 of the Indictment "does not identify the 'false statement and claim' that is the entire substance of the offense." ECF 30 at 2. Not true. The indictment states, in part: "made a false statement and claim that he was a citizen of the United States" and that this occurred on or about November 5, 2024. ECF 1. The level of specificity the defendant seeks is not required. *See generally United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001) (noting that "[u]sage of a particular word or phrase in the indictment is not required" if Court can recognize a "valid offense and the form of the allegation 'substantially states the element[s].'").

Finally, the defendant asserts that the Indictment is duplicitous. "'Duplicity' is the joining in a single count of two or more distinct and separate offenses." *United States v. Street*, 66 F.3d 969, 974 (8th Cir.1995). "Duplicity concerns are not present, however, when the underlying statute is one which merely enumerates one or more ways of committing a single offense." *United States v. Moore*, 184 F.3d 790, 793 (8th Cir. 1999). So too here. Count 1 is not duplicitous because the underlying statute merely enumerates one or more ways of committing a single offense, which as alleged is: making a false statement "in order to register to vote and to vote." ECF 1.

Accordingly, because the counts of the Indictment track the statutory language of the alleged charges and state the essential elements under a reasonable construction, the Indictment is sufficient on its face, and the defendant's motion to dismiss on these grounds should be denied.

## CONCLUSION

For all the foregoing reasons, the Court should deny the defendant's motion to dismiss the Indictment, and the matter should proceed to trial.

Dated: November 13, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

/s/ *Joseph S. Teirab*

BY: JOSEPH S. TEIRAB
Assistant United States Attorney
District of Minnesota